FILED

01/28/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 17, 2019

## STATE OF TENNESSEE v. PALACE R. CHANDLER

**Appeal from the Criminal Court for Davidson County**
**No. 2018-A-334    Steve R. Dozier, Judge**

_____

### No. M2018-02144-CCA-R3-CD

_____

The Defendant, Palace R. Chandler, was charged with theft of property valued at $2,500 or more but less than $10,000.  See Tenn. Code Ann. § 39-14-103.  Following a bench trial, the Defendant was found guilty and sentenced to a three-year suspended sentence to be served on community corrections.  On appeal, the Defendant contends that error exists because there was no proof showing the victim did not consent to the Defendant's taking the property.  Following our review, we affirm the judgment of the trial court; however, we remand this case to correct the judgement to reflect the full measure of the Defendant's pre-trial jail credit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Jay A. Umerley (on appeal); and Nicholas McGregor (at trial), Nashville, Tennessee, for the appellant, Palace R. Chandler.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The Defendant was charged with theft of a motor vehicle in a Nashville neighborhood. On June 7, 2018, a bench trial commenced. The State called Ross Jones, the victim, to testify. On November 19, 2017, the victim was driving in his car near the Nashville Farmer's Market on his way to pay his phone bill when he saw the Defendant "limping" while walking. The victim proceeded to stop his car and ask the Defendant if she would like a ride to "The Mission." The Defendant agreed to the victim's offer and entered the car.

The victim continued to a B.P. gas station and asked the Defendant if she would like a cup of coffee. Moments after the victim entered the gas station to pay his phone bill and buy coffee, the cashier informed him that "somebody's in your car leaving." The victim ran outside, but before the victim could stop the Defendant, she had driven his car away. The victim used the B.P. telephone to call the police.

The police arrived and created a written report. The victim had known the Defendant "probably seven minutes" before she drove his car away from the gas station. The car was a 2013 Kia Soul and worth approximately "$14,000," according to the victim. Following his discussions with police, the victim called the dealership who had a lien on the car, Auto Depo, to track the car with GPS.

The following day, November 20, 2017, the victim received a phone call from the police informing him that his car had been located at the Stadium Inn on Main Street. When the victim arrived at the Stadium Inn, he had no interactions with the Defendant. The victim's car was out of gas, but it had not sustained any damage. The victim also reported that the Defendant had stolen his phone and "probably three or four dollars['] worth of change." The Defendant did not have permission to drive the car, according to the victim.

On cross-examination, the victim testified that he did not know the Defendant prior to November 19, 2017. On that day, he reiterated that he had asked the Defendant if she needed a ride. After the Defendant entered his car, the victim drove to the B.P., approximately seven minutes away, and left the car running while he entered the gas station.

Officer William Gibbs with the Metro Nashville Police Department responded to a call on November 20, 2017 involving the victim and the Defendant at the Stadium Inn. Upon Officer Gibbs's arrival, the Defendant was already in custody. The Defendant stated that she had been "arrested because she was sitting in a vehicle that was not hers." When asked how she acquired the vehicle, the Defendant stated that she "knew the owner and had gotten in an argument with him, so she took his vehicle." The Defendant was

initially unable to give the name of the owner, but she proceeded to give a name that was not the victim's.

On cross-examination, Officer Gibbs agreed that he was not the first officer on the scene. Officer Gibbs stated that initially, the Defendant did not seem familiar with the victim. It was only after the Defendant was told she would need to retrieve her belongings from the car that she asserted the victim was the friend with whom she had argued. The Defendant was "frantic when she was uncertain if she would be able to retrieve her belongings[,]" according to Officer Gibbs.

The Defendant testified that she had known the victim for "approximately like [twelve] or maybe [twenty-four hours]" before the incident occurred. The Defendant was walking in the rain when the victim pulled his car over and asked if she needed a ride. The Defendant replied no. The victim continued to ask if he could buy the Defendant "something to eat," and the Defendant again refused. The Defendant agreed to a car ride after the victim stated, "let me pull out my ID and show you my ID and let you know that I'm not going to hurt you." The Defendant agreed to the car ride after seeing the victim's driver's license, because she "felt to [her] knowledge that he was an officer."

According to the Defendant, the victim drove her to an apartment building in Bellevue. The victim entered the building and "got him[self] a drink." Upon exiting the building, the victim drove the Defendant to a grocery store where he purchased food and drinks for the Defendant. The victim then drove the Defendant to a TJ Maxx where he met his daughter to give "her some change."

Following the stop at TJ Maxx, the victim drove the Defendant to a residence located at 802 Ramsey Street, a Metropolitan Development Housing Agency housing complex, and insisted, "anything you need… help yourself." The Defendant felt comfortable until the victim said, "you don't have to sleep with me, but I know you got some good sex[.]" The Defendant fell asleep and was awakened when she "heard somebody call [her] name." At that time, she "couldn't catch [her] breath" and "was gasping for air." Additionally, she "noticed [her] vein was busted like they down [sic] stuck me with something[.]"

After waking up, the victim drove the Defendant to a B.P. gas station. The victim exited the vehicle and entered the gas station. The Defendant moved into the driver's seat and "something just said jump over there and… just pull off." The Defendant wanted to get away from the victim because "[she] felt like [the victim] touched" her while she had been sleeping at the Ramsey residence. The Defendant drove the car back to the Ramsey residence and parked for the remainder of the day. She then proceeded to drive the car to the Stadium Inn and insisted the victim saw her sitting in the car.

On cross-examination, the Defendant confirmed that she drove the car to a truck stop about a block and a half from the Stadium Inn. She saw the victim at the truck stop and then drove the car to the Stadium Inn because "something just said drive up there and sit for a minute." The Defendant denied taking drugs or consuming alcohol on the day of the incident. The Defendant confirmed that she had the car for "about [twenty-six] hours." When the Defendant was asked, "So you stole a car and then you realized you had done something wrong, so you went back to try to find [the victim]?" She replied, "Yeah. I didn't go in the house, I didn't go do nothing [sic] I was supposed to."

On re-direct examination, the Defendant testified that she felt "like [she] had a right to take the car... due to [her] being drugged." She claimed that she "was discombobulated [and] wasn't in [her] right mind."

After the conclusion of proof, the Defendant's counsel pointed out that the court had heard two very different versions of events. He asked that the court credit the Defendant's narrative and find her not guilty. However, the court found the Defendant guilty of theft, rejecting the Defendant's argument that she took the vehicle under duress or necessity. Thereafter, the Defendant was sentenced to a suspended term of three years to be served on community corrections.

## ANALYSIS

The Defendant argues that the evidence was insufficient to sustain her conviction for theft. Specifically, she contends that the victim's actions did not show that the Defendant took the victim's car without his consent. The State responds that the evidence was sufficient to sustain the Defendant's conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." State v. Holder, 15 S.W.3d 905, 911 (Tenn.Crim.App.1999) (citing State v. Hatchett, 560 S.W.2d 627, 630 (Tenn.1978)).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Tennessee Code Annotated § 39-14-103 states in relevant part that "[a] person commits theft of property if, with intent to deprive the owner or property, the person knowingly obtains or exercises control over the property without the owner's effective consent."

In the light most favorable to the State, the record shows that the victim offered a ride to the Defendant which she accepted. While the victim was in the BP gas station, the Defendant drove away his car. He went outside and attempted to stop the Defendant. He immediately called the police and filed a written report for his stolen vehicle. He also contacted the lienholder to report the theft. Additionally, the Defendant admitted during her testimony that she took the victim's car without his permission. The Defendant did not attempt to return the car to the victim despite knowing she did not have consent to take the car. The car was located the following day in the parking lot of the Stadium Inn with the Defendant seated in the driver's seat.

Based on the foregoing evidence the trial court was justified in finding that the Defendant knowingly exercised control over the victim's car without his consent and with the intent to deprive the victim of his property. Hence, the evidence was sufficient to support the Defendant's conviction of theft of property valued at $2,500 or more and she is not entitled to relief. We note, however, that the judgment in the record fails to

reflect any pre-trial jail credit. As such, we remand the judgements for correction of this clerical error.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed. However, we remand this case to the trial court for a determination of the correct amount of the Defendant's community corrections credit and entry of corrected judgements reflection that amount.

_____
D. KELLY THOMAS, JR., JUDGE